## UNITED STATES v. BUFFALO COLD STORAGE CO.

(District Court, W. D. New York. April 30, 1910.)

Food (§ 12*)—Shipping Adulterated Foods—Statutes—Persons Liable.

The federal pure food law (Act June 30, 1906, c. 3915, 34 Stat. 768 [U. S. Comp. St. Supp. 1909, p. 1187]), providing that any person who shall ship or deliver for shipment, from any state or territory to any other

---

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

state or territory, any foods, drugs, medicines, or liquor, etc., adulterated or misbranded, shall be guilty of a misdemeanor, is not limited to a manufacturer or dealer, but applies as well to a warehouseman shipping adulterated or misbranded goods from one state to another.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 12.*]

On demurrer to indictment of the Buffalo Cold Storage Company for violating the pure food law. Demurrer overruled.

John Lord O'Brian, U. S. Atty.
Kellogg & Baker, for defendant.

HAZEL, District Judge. The demurrer of the defendant, Buffalo Cold Storage Company, to the indictment, is predicated upon the claim that the statute (Act June 30, 1906, c. 3915, 34 Stat. 768 [U. S. Comp. St. Supp. 1909, p. 1187]) entitled "An act for preventing the manufacture, sale, or transportation of adulterated, misbranded or poisonous or deleterious foods, drugs, medicines and liquors, and for regulating traffic therein, and for other puposes," was intended solely to apply to a manufacturer or dealer, and, as it is not charged in the indictment that said defendant was either a manufacturer, owner, or dealer in the commodity, the indictment is fatally defective and must be dismissed.

With this contention I do not agree. The statute forbidding the act provides that:

"Any person who shall ship or deliver for shipment from any state or territory, etc., to any other state or territory any such article so adulterated or misbranded shall be guilty of a misdemeanor."

Concededly the shipment and delivery of the commodity for transportation from Buffalo to Pittsburg in adulterated or impure condition is within the letter of the statute. It is unquestionably true that the inhibition of an act may be so plainly expressed by a statute that he who runs and thinks may comprehend its complete import and still not be within the contemplation of the lawmakers; but the provision under consideration does not fall within this class. Congress by its enactment intended to promote honesty and fair dealing in trade and secure to the public pure and wholesome food and drugs, and manifestly there must be a reasonable construction of the act to carry out the intention of Congress in this regard. There is nothing in the act which will result in any absurdity or lead to injustice or oppression, as was the case in Church of the Holy Trinity v. United States, 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226, and other cases of similar description cited in defendant's brief.

I have carefully read the excerpts of the debates in Congress on the subject prior to the passage of the act, and I think from what was said by Senators Reyburn and Money that the prohibition was expressly couched in broad language to include those who ship or deliver for transportation commodities of the character forbidden by the statute. It is quite true that warehousemen who deliver such commodities for transportation may not have knowledge of the deleterious character of the food and may be wholly innocent of crim-

inal intent; but this is a question which may be safely left to the trial jury. The indictment charges the offense in the language of the statute, and particularizes the nature of the offense in such a way as to apprise the defendant as to what he will be required to meet on the trial, and under the authorities this is sufficient. Ledbetter v. United States, 170 U. S. 606, 18 Sup. Ct. 774, 42 L. Ed. 1162; Armour Packing Co. v. United States, 209 U. S. 56, 28 Sup. Ct. 428, 52 L. Ed. 681; Burton v. United States, 202 U. S. 344, 26 Sup. Ct. 688, 50 L. Ed. 1057.

The demurrer is overruled.